HENRY W. WALTER *vs.* SUSAN WALTER & others.

Suffolk.    May 6, 1938. — October 25, 1938.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, DOLAN, COX, &
RONAN, JJ.

*Will*, Revocation: single clause.  *Evidence*, Competency, Extrinsic
affecting writing.

If it appears that a testator, in attempting an alteration of a provision
of his will by obliteration and interlineation after its execution, in-
tended that the revocation of the part obliterated should be condi-
tional upon the validity of the interlineation as a substitute, and
that the interlineation was not duly authenticated, parol evidence is
admissible to prove the original wording of the provision.

Findings that after the execution of a will the testator obliterated the
description of the real estate given in a devise and then interlined
a different description, without reëxecution, did not warrant a con-
clusion that he intended to revoke the original devise irrespective of
the validity of the alteration.

PETITION, filed in the Probate Court for the county of
Suffolk on March 11, 1937, for proof of the will of Alice
V. M. Judd, late of Boston.

The case was heard by *Dillon*, J.

In this court the case was argued at the bar in May, 1938,
before *Lummus, Qua, Dolan, & Cox*, JJ., and afterwards
was submitted on briefs to all the Justices.

*J. F. Daly*, for Susan Walter.

*J. E. Begley*, for Edward J. McCormick.

*C. T. Sexton*, for Mary J. Sheerin.

Cox, J.  These are two appeals by Susan Walter (1)
from a decree of the Probate Court allowing the will of
Alice V. M. Judd, late of Boston, by the terms of which
decree, however, the first and second "bequests" therein
contained were disallowed, and (2) from the denial of her
motion for additional findings of fact.  The decree allow-
ing the will recites, among other things, that it "appears
that the first and second bequests in said instrument were
revoked by obliteration by the testatrix after execution of

said instrument, that said bequests were so erased and marked out by the testatrix as not to be capable of interpretation at the time the said instrument was offered for probate, and said first and second bequests are disallowed," and "that said instrument in all other respects be approved and allowed as the last will and testament of said deceased." The probate judge filed a voluntary report of material facts which recites that the testatrix died on March 7, 1937, leaving as her heirs at law and next of kin Mary J. Sheerin, a sister, and Edward J. McCormick, a brother; that "It was agreed by all parties that the obliterations and interlineations were made by the testatrix after the will had been executed. The testatrix intended to cancel the first and second bequests in her will and to that end erased and crossed out certain substantial and necessary portions of each bequest by the use of an eraser and ink. The testatrix then inserted certain interlineations in both bequests. There was no republication or reexecution of the will at any time. There was no codicil." A photostatic copy of the will is incorporated in the report by reference, and is attached to the record.

Thereafter Susan Walter filed a motion for additional findings of fact in which it is set out that at the hearing on the allowance of the will Henry Walter, the executor named, testified that prior to the obliterations or interlineations the will read as follows: "To Susan Walter . . . I bequeath the house and land and garages situated as [*sic*] 743 Cambridge St., Brighton, Boston, Mass. To my niece, Mary G. Dwyer . . . I bequeath the house and land situated at 737 & 739 Cambridge St., Brighton, Boston, Mass.," and asked that a date be assigned for a hearing to take testimony, if need be, "to establish the fact as to how said Will read prior to such changes in order that a complete report of the facts can be had." The probate judge declined "to find further or additional facts." In the photostatic copy of the will the first devise appears as follows: "To Susan Walter . . . I bequeath the house and land . . . [then there follow words which have been obliterated in whole and in part by ink, the first one of which is "and"

and the last "situated"; the others cannot be read] at
. . . [then there follows an ink obliteration, evidently a
number of which the first figure is "7", with space for
two other digits and over which obliteration is written in
ink "737 & 739"] Cambridge St Brighton Boston Mass."
The second devise appears as follows: "To my neice
[*sic*] Mary G. Dwyer . . . , I bequeath the house and
land situated at . . . [then there follow ink obliterations
of a number consisting of three digits, the first and last of
which are the figure "7," the second being illegible, fol-
lowed by the character "&," the figure "739" and the words
"Cambridge St" over which obliteration is written in ink
"743 Cambridge St & Garages"] Brighton Boston Mass."
In the voluntary report of material facts the probate judge
states: "The contestants have not appealed from the
entry of this decree [allowing the will]. The appeal having
been taken by the proponents of the will to the form of the
decree wherein the first and second bequests of said will
were decreed to have been revoked by the testatrix by
obliteration, I report the facts bearing on that issue only."
No appeal of the proponent appears in the record or in
the docket entries. The only appeals that appear in the
record are those of Susan Walter.

G. L. (Ter. Ed.) c. 191, § 8, provides, among other things,
that a will once properly executed can be revoked "by
burning, tearing, cancelling or obliterating it with the in-
tention of revoking it, by the testator himself. . . ." See
*Worcester Bank & Trust Co.* v. *Ellis*, 292 Mass. 88. And it is
the law in this Commonwealth that a cancellation by a tes-
tator, after execution, of certain clauses in his will, with the
intention of revoking them only, is a valid revocation of
such clauses, but not of the whole will. *Bigelow* v. *Gillott*,
123 Mass. 102. In the case of *Sanderson* v. *Norcross*, 242
Mass. 43, 45–46, Rugg, C.J., said: "The doctrine is widely
established that a revocation of a valid will, which is so
intimately connected with the making of another will as
to show a clear intent that the revocation of the old is made
conditional upon the validity of the new, fails to become
operative if the new will is void as a testamentary disposition

for want of proper execution.  Revocation in its last analysis is a question of intent.  A revocation grounded on supposed facts, which turn out not to exist, falls when the foundation falls.  Hitherto this court has never had occasion expressly to pass upon the soundness of this precise doctrine, although it was adverted to and impliedly recognized in *Laughton* v. *Atkins*, 1 Pick. 535, 544. . . . It is so generally adopted that it is recognized as a part of our law without further discussion. . . . [See this opinion for abundant citations from other jurisdictions.]  It is a principle to be applied with caution. . . . Courts have no power to reform wills.  Hypothetical or imaginary mistakes of testators cannot be corrected.  Omissions cannot be supplied. . . . The only means for ascertaining the intent of the testator are the words written and the acts done by him.  *Polsey* v. *Newton,* 199 Mass. 450.  *Eustace* v. *Dickey,* 240 Mass. 55, 72, 73, and cases there collected."  This doctrine also has been invoked where the testator makes an alteration in his will by obliteration or erasure and interlineation without authenticating such alteration by a new attestation as required by statute, but in such a way as to show a clear intent that the revocation is made conditional upon the validity of the interlineation taking effect as a substitute; and such alteration not being made so as to take effect, the original will stands in legal force the same as it did before, so far as it is legible after the attempted alteration or so far as its original contents can be shown by competent evidence.  *Soar* v. *Dolman,* 3 Curt. Eccl. 121.  *Short* v. *Smith,* 4 East, 419.  *Onions* v. *Tyrer,* 2 Vern. 742.  *Jackson* v. *Holloway,* 7 Johns. 394. *Doane* v. *Hadlock,* 42 Maine, 72.  *Wolf* v. *Bollinger,* 62 Ill. 368.  *Gardner* v. *Gardiner,* 65 N. H. 230.  See 62 Am. L. R. 1367, 1401.  This is but an extension of the doctrine that was accepted in *Sanderson* v. *Norcross,* 242 Mass. 43.  Upon the record in the case at bar, it can have no application unless competent parol evidence is admissible to show what the language of the will was before the obliterations were made.  We are of the opinion that such evidence is admissible for that purpose.  *In re Ibbetson,* 2 Curt. Eccl. 337. *Soar* v. *Dolman,* 3 Curt. Eccl. 121.  *Brooke* v. *Kent,* 3 Moore

P. C. 334. *In re Harris*, 1 Sw. & Tr. 536. *In re Kent*, 169 App. Div. (N. Y.) 388. *Hartz* v. *Sobel*, 136 Ga. 565. *Thomas* v. *Thomas*, 76 Minn. 237, 243, 244.

In the case at bar the evidence is not reported. No stenographer was appointed to take the evidence (G. L. [Ter. Ed.] c. 215, § 18), and no request was made for any report of it under G. L. (Ter. Ed.) c. 215, § 12. The case is to be considered on the facts reported and the decree entered, and the question presented is whether the conclusion reached is consistent with the facts found and whether the decree is within the scope of the petition and supported by the facts found. *Brodrick* v. *O'Connor*, 271 Mass. 240, 243. *Bratt* v. *Cox*, 290 Mass. 553, 557–558.

There is no question as to the decree being within the scope of the petition, but we do not think it is supported by the facts found. The misapprehension of the probate judge that the "contestants" had not appealed and that he was reporting the facts bearing on the appeal of the proponent of the will "to the form of the decree wherein the first and second bequests of said will were decreed to have been revoked . . . by obliteration," may not be important. We think, however, that the judge based his finding that the deceased intended to cancel the first and second devises upon his subsidiary findings that, (1) "to that end she erased and crossed out certain substantial and necessary portions of each bequest by the use of an eraser and ink," and, (2) "so . . . as not to be capable of interpretation at the time the said instrument was offered for probate." The judge, in using the expression "capable of interpretation," apparently meant only capable of being read. From the facts hereinbefore quoted, which are recited in the decree and also in the report of material facts, we do not think the judge was warranted in finding an intent on the part of the deceased unconditionally to revoke the devises, especially in view both of the finding that she "then inserted" the interlineations, and of the nature of those interlineations as disclosed on the face of the will. In our opinion, it is a fair inference that the judge reached his conclusion without considering the significance of the

interlineations made by the deceased which, under the rule applicable to such a situation, is a factor of vital importance. The photostatic copy of the will was incorporated in the record at the instance of the judge. When it is examined, even if that were all there is to the case, it is apparent that the testatrix attempted to make changes in the devises which she had provided for the beneficiaries named in the two clauses under inquiry. Her intent to accomplish this is evident and we do not think that the mere obliterations in the description of the previous devises, without a consideration of the effect, if any, of the interlineations, amounts to an intent to revoke the devises.

In this view of the case it is unnecessary to deal with the other appeal.

The decree is reversed and the case remanded to the Probate Court for further proceedings in accordance with this opinion.

*Ordered accordingly.*